THE CITY OF DICKINSON IN THE STATE OF NORTH DAKOTA, a Municipal Corporation, Plaintiff and Appellant, v. DAKOTA NATIONAL BANK OF DICKINSON, N. Dak., a Corporation, et al., Defendants. ALFRED WHITE, Geo. A. Senour, S. M. Ferris, and J. G. Sanders, Defendants and Respondents.

(202 N. W. 279.)

**Depositaries — statute held to have terminated liability of sureties on existing depositary bonds as to any subsequent deposits made contrary to statute.**

1. Section 7 of chapter 147 of the Session Laws of 1919, which required the deposit of public funds in the Bank of North Dakota and prohibited, under penalty, their deposit elsewhere, had the effect of terminating the liability of sureties on depositary bonds previously executed as to any deposits subsequently made contrary to its provisions.

**Depositaries — complaint in action by municipality against sureties on depositary bond held demurrable as failing to allege breach of sureties' obligation.**

2. In an action against the sureties on a depositary bond given prior to the taking effect of chapter 147 of the Laws of 1919, a complaint which fails to allege a breach of the obligation, consisting in the failure to pay over deposits made prior to the termination of the depositary relationship, is demurrable.

Opinion filed January 8, 1925.

Depositaries, 18 C. J. § 63 p. 589 n. 33; § 85 p. 596 n. 98.

Appeal from the District Court of Stark County, *Pugh,* J.

Affirmed.

*Tobias D. Casey,* for appellant.

A continued obligation for no definite and fixed period is subject to termination at any time by either party. The sureties may terminate it by giving notice. 18 C. J. 589.

The authorities go further, it held in effect that an obligation entered into voluntarily and for a sufficient consideration, unless it contravenes the policy of the law, or is repugnant to some statute, is valid at common law, notwithstanding the attempt may have been to execute it pursuant to a statute with the terms with which it does not strictly comply (quoting other cases). As indicated, the duration of the contract between the county and the banking company was unfixed, and was liable to be terminated by order of the County Board at any time. So, it would seem, the sureties were at liberty to terminate the agreement, so far as they were concerned, at any time, on giving notice. Monitowak County v. Truman, 64 N. W. 307.

The sureties are stopped from denying the validity of the depositary law, or the truth of recitals in the bond which they execute. 18 C. J. 589.

The surety on the bond of the depositary bank will not be heard to say that there was an illegal agreement between the bank and the treasurer and that state funds should remain in and be used by the bank for long periods of time after collections were made, nor will pay any improper action of the bank in keeping the accounts of the state or in handling the deposits lessen the liability of the surety. State v. United States Fidelity & G. Co. 106 Pac. 1040; Western Casualty & Guaranty Ins. Co. v. Board of Com'rs. 159 Pac. 655; People v. Lee, 10 N. W. 884; Barnes v. Cushing, 61 N. E. 902.

Bonds are to be treated as cumulative when this is the intention of parties, and where a bond is expressly in addition to, and exclusive of another bond for the same period, liability thereon accrues before the other bond is exhausted. Sureties are liable for the loss due to robbery and for the conversion of money deposited for safekeeping merely. 18 C. J. 588.

A bond should be construed to uphold the agreement rather than to render it void, and should be construed as a whole, and, if possible,

effect should be given to each clause and word. Western Casualty & Guaranty Co. v. County Board, 159 Pac. 655; 9 Cyc. 586.

The repeal of statutes by imputation is not favored by the courts. 36 Cyc. 1071.

*Otto Thress,* for respondent.

Where a bank cashier is appointed for one year, but his bond simply recites that he had been chosen and appointed without any reference to the term for which he has been chosen, while the condition of the bond is that he shall well and truly serve the bank during his continuance in office, his sureties are not liable for defalcations committed after the expiration of one year. Blades v. Dewey, 136 N. C. 176, 103 Am. St. Rep. 924.

If the term of office is prescribed and the bond is conditioned without express limitation as to the period for the faithful performance of principal's duties and intended laws, appears to give it the whiter effect it will be construed as intended to cover acts accordingly, only within the prescribed period. North St. Louis Bldg. Asso. v. Obert, 169 Mo. 507, 69 S. W. 1044.

Where an officer serves several successive terms and has a bond with different sureties, for which term the sureties on the bond for the last term are responsible for money in the hands of the officer at the time of the execution of such bond. 29 Cyc. 1458.

BIRDZELL, J. This is an appeal from a judgment entered pursuant to an order sustaining the demurrer of certain defendants to the complaint and also from the order sustaining the demurrer. Ignoring formal allegations, the complaint alleges the giving of two depositary bonds by the defendant, Dakota National Bank of Dickinson, at different times, each bond being signed by different individuals as sureties (with one exception not necessary to note). It then alleges the failure of the principal (the bank) on January 2, 1924 and pleads, as a breach of both bonds, the failure of the bank to pay to the plaintiff $6108.04 belonging to the plaintiff and on deposit in the bank when it closed, partly in the form of a checking account and partly evidenced by certificates of deposit. The first bond is dated February 28, 1916 and the sureties therein named justified in September, 1917. These sureties, except the one who was also surety on the second bond, are

the demurrants. The second bond is dated January 20, 1922, but the complaint does not purport to state any cause of action against any demurring defendant on account of the giving of the second bond. Hence, we will ignore this bond in the further discussion with reference to the correctness of the order and judgment appealed from.

The first bond recites that, whereas the Dakota National Bank of Dickinson had been designated by the city of Dickinson as a depositary for the funds of the city, the condition of the bond was such that if the bank would safely keep and repay all funds deposited, then the obligation would be void. It is alleged that this bond was duly approved and that it has been in full force and effect since its approval and filing. The contention of the appellant is that, since the bond is in form a continuing bond and since it does not appear in the complaint that it had been cancelled prior to the failure of the bank in January, 1924, the complaint states a cause of action against the principal and the sureties thereon. On the other hand, the respondent contends that the complaint must be read in the light of the statutes regulating public depositaries, and that when so read the bond was in legal effect terminated as a continuing depositary bond long prior to the failure of the bank, and that, hence, any breach of said bond must be predicated upon the failure of the bank to repay funds which were on deposit prior to the legal termination of the bond.

In 1919 the legislature passed an act which is commonly referred to as the Bank of North Dakota Act. Section 7 of that act (chapter 147) reads in part as follows:

"All state, county, township, municipal and school district funds, and funds of all penal, educational and industrial institutions and all other public funds shall be, by the person having control of such funds, deposited in the Bank of North Dakota within three months from the passage and approval of this Act, subject to the disbursement for public purposes on checks drawn by the proper officials in the manner now or hereafter to be provided by law." Then, after stating certain immaterial exceptions, it reads:

"Any person who shall violate any of the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished by imprisonment in a county jail for not less than ninety. days, and by a fine of not less than one hundred dollars."

After this statute had been in operation for some time, an initiated law was enacted, specifically amending the section partially quoted above to read as follows: "All state funds, and funds of all state penal, educational and industrial institutions shall be, by the persons having control of such funds, deposited in the Bank of North Dakota." (N. D. Laws 1921, p. 255). This eliminated the requirements of the deposit of municipal funds in the Bank of North Dakota. At the session of the legislature immediately following the enactment of the initiated amendment, supra, there was passed another law regulating legal depositaries, chapter 56, Session Laws of 1921, which law, among other things, requires that before any state or national bank shall act as a depositary of public funds it shall furnish a bond. Apparently, the second bond in the instant suit was furnished pursuant to this statute. The precise question before us is, Did Section 7 of Chapter 147 of the Laws of North Dakota for 1919 have the effect of cancelling the depositary bond upon which the defendants were sureties, so as to terminate the liability of the sureties for subsequent deposits? We are of the opinion that this question must be answered in the affirmative. Concededly, the matter of regulating the deposit of public funds and providing for their safekeeping is properly a legislative function. By the act in question the legislature has clearly said that there should be but one depositary for public funds of the character of those involved in this suit, having even made the deposit in any other place by the officer in charge a misdemeanor. The bond upon which the demurring defendants were liable was on its face and by its terms a depositary bond. When the statute in question came into operation the performance of the function of a public depositary by the principal was rendered impossible by operation of law. Hence, the conditions upon which any further liability could be contracted were changed. The defendants might well have been content to guarantee the performance of the obligations of a legal depositary relationship, but quite unwilling to stand sponsor for an illegal relationship. At any rate the relationship would be entirely different after the taking effect of the Bank of North Dakota Act than before, and we are of the opinion that the sureties had a right to assume that their obligations touching future deposits were at an end when that law prescribed the continuance of the relationship. McHenry County v. Northern Trust Co. 51 N. D. 646,

200 N. W. 892. Hence, we are of the opinion that to predicate a liability upon the first bond the plaintiff should allege facts showing the failure of the bank (the principal) to repay funds placed on deposit prior to the time when the legal relation of the depositary terminated in 1919. We cannot assume in aid of the pleading that the officers of the city, whose duty it was to deposit the funds of the city in the Bank of North Dakota, incurred the penalties of the Act of 1919 by allowing the city's funds to remain continuously in the defendant bank. It follows that the complaint does not state sufficient facts to constitute a cause of action against the demurring defendants and that the judgment and order appealed from should be affirmed. It is so ordered.

CHRISTIANSON, Ch. J., and NUESSLE, JOHNSON, and BURKE, JJ., concur.